IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

DECEMBER SESSION, 1997

FILED

February 6, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | **C.C.A. NO. 03C01-9704-CR-00126** |
| | ) | |
| Appellee, | ) | |
| | ) | **GREENE COUNTY** |
| | ) | |
| **V.** | ) | |
| | ) | **HON. JAMES E. BECKNER, JUDGE** |
| **JOHN ANTHONY SANDERS,** | ) | |
| | ) | |
| Appellant. | ) | **(AGGRAVATED BURGLARY)** |

FOR THE APPELLANT:

**DOUGLAS L. PAYNE**
114 South Main Street
Greeneville, TN 37743

FOR THE APPELLEE:

**JOHN KNOX WALKUP**
Attorney General & Reporter

**CLINTON J. MORGAN**
Assistant Attorney General
2nd Floor, Cordell Hull Building
425 Fifth Avenue North
Nashville, TN 37243

**GREG W. EICHELMAN**
District Attorney General for Greene Co.

**CECIL C. MILLS**
Assistant District Attorney General
109 South Main Street
Greeneville, TN 37743

OPINION FILED _____

AFFIRMED

THOMAS T. WOODALL, JUDGE

# OPINION

The Defendant, John Anthony Sanders, appeals as of right, from his convictions of aggravated burglary and theft in the Criminal Court of Greene County. Following a jury trial, the Defendant was found guilty of three (3) counts of aggravated burglary and three (3) counts of theft over $1,000. The trial court sentenced Defendant as a Range I Standard Offender to three (3) consecutive sentences of six (6) years each for the aggravated burglary convictions, and three (3) sentences of four (4) years each for the theft convictions to be served concurrently with each other and the aggravated burglary convictions. Defendant was fined a total of $14,000 as a result of the convictions. Defendant raises three (3) issues in this appeal: (1) whether the evidence is sufficient to support the three theft convictions; (2) whether the trial court erred in sustaining the prosecutor's objection to a question asked on cross-examination; and (3) whether the trial court committed sentencing errors. We affirm the judgment of the trial court.

## I. Sufficiency of the Evidence

When an accused challenges the sufficiency of the convicting evidence, the standard is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). This standard is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence or a combination of direct and circumstantial evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). On appeal, the State is entitled to the strongest legitimate view of the evidence and all inferences

therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. State v. Williams, 914 S.W.2d 940, 945 (Tenn. Crim. App. 1995) (citing State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982)); State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973).

Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, not this court. State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App.), perm. to appeal denied, id. (Tenn. 1987). Nor may this court reweigh or reevaluate the evidence. Cabbage, 571 S.W.2d at 835. A jury verdict approved by the trial judge accredits the State's witnesses and resolves all conflicts in favor of the State. Grace, 493 S.W.2d at 476.

Larry White testified at trial that on or about May 30, 1996, he, Jonah Hensley and Defendant drove to the Francis home where Defendant and Hensley got out of the car. A short time later, White picked up Defendant on the street near the Francis home. Defendant told White to go back and get Hensley who had a sack full of items they had stolen from the Francis home. The three of them also went to the Marshall home. Hensley and Defendant went inside the house while White stood watch. Defendant and Hensley came out with the stolen items which they took to a garage located behind Defendant's residence. The three men, along with Craig Gobble, then went to the Sexton home. Defendant and Hensley removed items from this house and took them back to the garage. The stolen property was later moved at the direction of Defendant to another garage in the same area.

Craig Gobble testified at trial that he went with Defendant and the two other men to the Sexton home. Hensley and Defendant went inside and came out with two tied-up blankets filled with stolen items and a computer screen. He testified that they went back to the garage where the Defendant made the decision about what to keep.

James Randolph, a detective with the Greene County Sheriff's Department, testified that he was tipped off by an incarceree that he should go talk to a Ms. Lisa Seaton. Don Jones, a detective with the Greeneville Police Department, went with Detective Randolph to talk with Ms. Seaton, who gave the detectives two rings which she said were given to her by the Defendant. The detectives took the rings to burglary victims Ms. Francis and Mrs. Marshall, who identified them as items stolen from their residences. The detectives then went to the Defendant's home in Greeneville, Tennessee. Defendant gave them permission to search and the detectives removed stolen items from the two garages located behind the Defendant's home. Jones testified that there were numerous people around the garage area the day of the search. A subsequent search the following day of Defendant's residence revealed a tin can with items belonging to Ms. Francis and the Sextons.

All three burglary victims, Greg Marshall, Janet Francis and Joe Sexton, testified that their homes had been broken into and that numerous items were missing. The victims testified concerning the fair market value of the items taken from their homes as follows:

State:           Q.  Do you have a fair market value for the items that were
                 taken from your home?

Greg Marshall:    A. Approximately $1,200.

. . .

State:    Q. What was the fair market value of all those items?

Janet Francis:    A. Close to $1,800.

. . .

State:    Q. What was the fair market value of the items that were taken from your home, Mr. Sexton?

Joe Sexton:    A. There's a lot of things you couldn't put a value on.

State:    Q. That's almost always true.

Joe Sexton:    A. Somewhere between two and three thousand dollars.

In the instant case, Defendant does not challenge his aggravated burglary convictions and he also does not challenge the fact that he committed the three thefts. His argument is that the State failed to prove that the stolen property had a fair market value, which is an element of the offense. Specifically, Defendant argues that the question "What is the fair market value of your property?" is not an acceptable way to prove value and that therefore the responses to that question should be disregarded as being legal conclusions. The jury in this case was instructed by the court that it could find that the value of the property was more than $1,000 but less than $10,000, and that it could also consider the lesser value of more than $500 but less than $1,000. The jury in this case found each count of theft to be more than $1,000 but less than $10,000. So the issue becomes whether or not the evidence was sufficient to establish the value of the items stolen exceeded $1,000. Value is defined as follows:

(i)    The fair market value of the property . . . at the time and place of the offense; or

> (ii) If the fair market value of the property cannot be ascertained, the cost of replacing the property within a reasonable time after the offense. . . .

Tenn. Code Ann. § 39-11-106(a)(36)(A)(i) and (ii).

The owner of personal property may testify as to the fair market value of the property. Tenn. R. Evid. 701(b); Reaves v. State, 523 S.W.2d 218, 220 (Tenn. Crim. App. 1975). All three burglary victims testified at trial as to the accuracy of documents entered into evidence listing the stolen items. Furthermore, each victim looked at pictures taken by the police of the stolen items and testified that those were in fact items stolen from each of their homes. The lists of stolen items as well as the pictures of the items were made exhibits and shown to the jury. A trier of fact may, from all of the evidence presented at trial, determine the fair market value of the stolen property. State v. Hamm, 611 S.W.2d 826, 828-29 (Tenn. 1981). There were circumstances sufficient to establish Defendant's involvement in the theft of all of the items taken from the victims' residences and there was sufficient proof that the value exceeded $1,000 in each count. In viewing the evidence in the light most favorable to the State, we find that the evidence of the value of the stolen property was established by the proof beyond a reasonable doubt. This issue is without merit.

## II. Trial Court's Sustaining of State's Objection to Testimony

Defendant argues that the trial court erred when it sustained a "hearsay" objection by the Assistant District Attorney General when the Defendant's attorney asked Defendant's wife whether she had knowledge of an affair between another prosecution witness, Lisa Seaton, and the Defendant. However, the Assistant

District Attorney did not state the basis of his objection. Before the court could announce that the objection was sustained, the witness answered "No, sir." Defense counsel did not request the court to require the prosecutor to give the basis for the objection, and did not request an offer of proof. There is nothing in the record showing that Defendant presented how the evidence would be relevant and admissible. Even if it was error for the court to sustain the objection, relief on appeal is not required for a party who fails to take whatever action is reasonably available to prevent or nullify the harmful effect of an error. Tenn. R. App. P. 36(a). This issue is without merit.

## III. Sentencing

When an accused challenges the length, range, or the manner of service of a sentence, this court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). There are, however, exceptions to the presumption of correctness. First, the record must demonstrate that the trial court considered the sentencing principles and all relevant facts and circumstances. Id. Second, the presumption does not apply to the legal conclusions reached by the trial court in sentencing. Third, the presumption does not apply when the determinations made by the trial court are predicated upon uncontroverted facts. State v. Smith, 898 S.W.2d 742, 745 (Tenn. Crim. App. 1994), perm. to appeal denied, id. (Tenn. 1995).

Our review requires an analysis of: (1) The evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, & -210; see State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

If our review reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after having given due consideration and proper weight to the facts and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). Upon review of the record, we find that the trial court followed proper statutory sentencing procedure, and therefore, review by this Court is de novo with a presumption of correctness. We make this conclusion notwithstanding the fact that we determine, as explained below, that the trial court should have found one mitigating factor to be applicable, though worthy of negligible effect.

Defendant argues the following four issues in regards to sentencing: (1) the trial court erred in its reliance on one enhancement factor; (2) the trial court erred in rejecting two mitigating factors; (3) the trial court erred in imposing consecutive sentences; and (4) the trial court erred in imposing maximum sentences.

The trial court found the following four enhancement factors to be applicable: (1) Defendant had a previous history of criminal convictions or criminal behavior; (2) Defendant was a leader in the commission of the offense; (3) Defendant had a previous history of unwillingness to comply with the conditions of a sentence involving release in the community; and (4) the felony was committed while Defendant was on parole from a prior felony conviction. Tenn. Code Ann. § 40-35-114(1), (2), (8) and (13)(B). The court found no mitigating factors to apply.

First, Defendant only contests the enhancement factor asserting that he was a leader in the commission of the offenses. Tenn. Code Ann. § 40-35-114(2). Enhancement for being a leader in the commission of an offense does not require the Defendant to be the sole leader but only that he be "a" leader. State v. Hicks, 868 S.W.2d 729, 731 (Tenn. Crim. App. 1993). Testimony at trial revealed that Defendant chose the homes to burglarize and told the other men what to get out of each home. He made the decisions about what property to keep and he was in control of the garages behind his residence where the stolen items were kept. He also had first choice of the items he wanted to keep for himself. Clearly, Defendant was a leader in the commission of the offenses. We find that the enhancement factor is fully supported by the evidence. This issue is without merit.

Second, Defendant argues that the trial court erred in not applying the following two mitigating factors: (1) Defendant's criminal conduct did not cause or threaten serious bodily injury; and (2) Defendant's mental condition significantly reduced his culpability. Tenn. Code Ann. § 40-35-113(1) and (8). This Court has observed that "application of the mitigating factor under T.C.A. § 40-35-113(1) should occur unless the conduct related to *serious* bodily injury and the factor should

be considered in relation to the facts and circumstances of the particular case." State v. Christman, C.C.A. No. 01-C-01-9211-CC-00361 (Tenn. Crim. App., Nashville, Sept. 2, 1993) (no Rule 11 application filed). Although the trial court may be correct in stating that burglaries always involve a chance that the property owner might return, in the instant case there was no immediate threat of confrontation or harm. Therefore, the trial court should have considered this factor in mitigation of the aggravated burglary sentence. The trial court did state that even if the mitigating factor were applicable, it would be afforded so little weight that it would have no value in reducing the sentence in this particular case. We agree, and conclude that any mitigation effect is completely outweighed by the applicable enhancement factors. Any resulting error in not applying this mitigating factor is harmless, at most. Tenn. R. App. P. 36(b); Tenn. R. Crim. P. 52(a).

Defendant argues that his mental condition should have been a mitigating factor. The only evidence offered by Defendant was a letter from a mental health center. Defendant was found competent to stand trial and was also found sane at the time of the commission of the offenses. Although the letter did address several emotional disorders, it did not evidence a mental condition that would have significantly reduced Defendant's culpability for the offenses. Therefore, the trial court did not abuse its discretion in rejecting this mitigating factor.

Third, Defendant argues that the trial court erred in ordering the three burglary sentences to run consecutively to each other. However, pursuant to Tennessee Code Annotated section 40-35-115(b)(2), we find that the record supports by a preponderance of the evidence that Defendant is an offender whose record of criminal activity is extensive, thus making him a candidate for consecutive

sentencing. Defendant's prior criminal history includes a conviction of aggravated burglary in 1986, robbery in 1980, assault by stabbing and cutting a fellow inmate while in a penitentiary, and a lengthy juvenile record from age 10 through age 16 when he was committed to the Ohio Youth Commission and paroled about the time of his eighteenth birthday. The juvenile record includes assault upon a teacher in school at age 10, larceny of an automobile at age 11, aggravated robbery, theft, and probation violation at age 12, breaking and entering at age 13, aggravated burglary, rape, and aggravated robbery at age 15, and aggravated burglary and violation of court order at age 16. Defendant was thirty-four (34) years old at the time of the sentencing hearing, and his adult record also includes a parole violation for absconding. He had apparently spent a significant amount of time during his adult life in the penitentiary system of Ohio.

Consideration of prior criminal convictions and conduct for both enhancement and consecutive sentencing purposes is not prohibited by the Tennessee Criminal Sentencing Reform Act of 1989. State v. Davis, 825 S.W.2d 109, 113 (Tenn. Crim. App. 1991). Furthermore, this court has held that juvenile offenses may be considered to justify consecutive sentences. State v. Jeffrey A. Mika, C.C.A. No. 02C01-9508-CR-00244, Shelby County, slip op. at 10-11 (Tenn. Crim. App., Jackson, filed Feb. 25, 1997) (no Rule 11 application filed); State v. Robert Chapman, C.C.A. No. 02C01-9510-CR-00304, Shelby County, slip op. at 8 n. 1 (Tenn. Crim. App., Jackson, Jan. 14, 1997) (Rule 11 application denied Sept. 8, 1997). In addition, we find from the record that consecutive sentencing is necessary to protect the public from Defendant and is reasonably related to the severity of the offenses committed by Defendant. State v. Wilkerson, 905 S.W.2d 933, 938 (Tenn. 1995). This issue is without merit.

Lastly, Defendant argues that the trial court erred in sentencing him to the maximum sentence of six (6) years for each aggravated burglary conviction. Tennessee Code Annotated section 40-35-210(c) provides that the minimum sentence within the range is the presumptive sentence for a Class C felony. If there are enhancing and mitigating factors, the court must start at the minimum sentence in the range and enhance the sentence as appropriate for the enhancement factors and then reduce the sentence within the range as appropriate for the mitigating factors. Tenn. Code Ann. § 40-35-210(e). If there are no mitigating factors, the court may set the sentence above the minimum in that range but still within the range. Tenn. Code Ann. § 40-35-210(d). If the trial judge complies with the purposes and principles of sentencing and his findings are adequately supported by the record, then the weight assigned to the existing enhancing and mitigating factors is generally left to his discretion. See State v. Marshall, 870 S.W.2d 532, 541 (Tenn. Crim. App.), perm. to appeal denied (Tenn. 1993). Defendant was sentenced as a Range I offender because the prosecutor failed to timely file the notice of intent to seek enhanced punishment as set forth in Tennessee Code Annotated section 40-35-202. Aggravated burglary, a Class C felony, has a sentence range of three (3) to six (6) years for a Range I offender. Tenn. Code Ann. §§ 40-35-112(a)(3) and 39-14-403(b). The trial court correctly found four enhancement factors to apply. Even if the trial court had applied the one mitigating factor regarding no serious bodily injury, it would not weigh heavily against the four enhancement factors. The trial court was justified in imposing the maximum sentence. Even if some evidence of mitigation exists, where the mitigation factors are strongly outweighed by the enhancement factors, as in this case, the maximum sentence is warranted. State v. Ruane, 912 S.W.2d 766, 785 (Tenn. Crim. App. 1995). This issue is without merit.

After thorough review of the record, we find no merit to Defendant's arguments. The judgments of the trial court are accordingly affirmed.

_____
THOMAS T. WOODALL, Judge

CONCUR:


_____
DAVID H. WELLES, Judge


_____
DAVID G. HAYES, Judge